# In the United States Court of Federal Claims

05-249C

(Filed: April 9, 2010)

* * * * * * * * * * * * * * * * * * * *

NYCAL OFFSHORE
DEVELOPMENT CORP.,

               Plaintiff,

v.

THE UNITED STATES,

               Defendant.

* * * * * * * * * * * * * * * * * * * *

Election of Remedies; Forced Election; Indivisible Contract; Inconsistent Remedies; Restitution; Expectancy Damages

*Jeffrey E. Glen*, New York, NY, for plaintiff.

*Gregg M. Schwind* and *Allison Kid-Miller*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, for defendant.

## OPINION

BRUGGINK, Judge.

     This is a contract action brought by a part owner of two government-issued offshore oil and gas leases. In this and a related action, we previously held that the government committed a total breach of the lease contracts. *See Amber Resources v. United States*, 68 Fed. Cl. 535 (2005) ("Amber I"). Co-owners of the leases sought restitution in lieu of lost profits and recovered. *See Amber Resources v. United States*, 73 Fed. Cl. 738 (2009) ("Amber II"); *Amber Resources v. United States*, No. 02-30 (Fed. Cl. Jan. 11, 2007) (order for Rule 54(b) Judgment). The plaintiff here, Nycal Offshore Development Corp. ("Nycal"), did not join the other owners in seeking restitution and instead seeks lost profits. Pending is defendant's motion to limit plaintiff to an award of restitution or, in the alternative, to force plaintiff to an election of remedies before trial. The motion is fully briefed. We heard oral argument on

March 2, 2010. For the reasons set out below, the motion is denied.

## BACKGROUND

Plaintiff was originally a consolidated party in *Amber Resources v. United States*, No. 02-30. The facts giving rise to this dispute have been recounted in earlier opinions and will be only briefly summarized here.[1] Some thirty years ago, the United States leased sections of the ocean floor off the coast of California to private businesses for oil and gas exploration. In 1990, Nycal acquired a 4.25 percent interest in two of the leases: OCS-P 460 and 464. Subsequent legislation delayed and eventually severely limited commercial exploration and extraction, essentially rendering these leases worthless. Consequently, many of the lessees sued here in 2002. We agreed with plaintiffs that the government's actions amounted to a total breach, entitling the plaintiffs to recover. All plaintiffs other than Nycal elected to receive restitution, i.e. the return of their lease payments. Nycal declined to make an election at that time and its case was stayed. After further litigation and entry of partial final judgment as to the other plaintiffs, we reactivated Nycal's case and deconsolidated it. Nycal now chooses to seek expectation damages for the profits, if any, it would have reaped but for the government's breach. Defendant seeks to limit Nycal to restitution.

## DISCUSSION

One aspect of defendant's motion can be denied as moot, namely its alternative request that Nycal be put to an election before trial. During oral argument, counsel for Nycal categorically represented that it was electing to pursue only lost profits and would not seek restitution. This election is based on the assumption, of course, that it had a choice between the two remedies.

The balance of defendant's motion is that defendant has no such choice. It *must* elect restitution because its former co-lessees chose that remedy. For the reasons announced during oral argument, and as further explained here, we disagree. Nycal could opt to pursue either restitution or lost profits and it has

---

[1] *Amber I*, 68 Fed. Cl. 535; *Amber II*, 73 Fed. Cl. 738 ; *Amber Resources v. United States*, 538 F.3d 1358 (Fed. Cir. 2008); *Amber Resources v. United States*, 87 Fed. Cl. 16 (2009).

chosen the latter.[2]

Defendant discerns in the case law a rule that one breach of an indivisible contract can only lead to one remedy, irrespective of the number of injured parties. In this case, because restitution has already been paid to the former 95.75 percent interest holders, the possibility of a lost profits award to Nycal, the remaining 4.25 percent holder, is foreclosed, according to defendant.

Nycal does not dispute that the leases are indivisible contracts or that they must stand or fall as whole contracts. It disagrees, however, with defendant's proposition that awarding a different remedy to a different leaseholder would be improper. Nycal contends that it was sufficient here that the fractional leaseholders were united in claiming a total breach. Nycal asserted, and the court held, that defendant could not and would not perform any part of its bargain. The contract was effectively at an end, except for determination of a remedy. In that context, Nycal contends, any rule based on the indivisibility of contracts is not offended because Nycal would not be receiving both expectancy damages and restitution. Nor is there any necessary inconsistency in a different remedy. The fact that other former co-lessees opted for a different remedy would be immaterial.

The precise question we are confronted with is whether the holder of a fractional interest in an otherwise undivided lease may recover damages when restitution has been paid to the former holders of the remaining lease interests. The parties have not presented us, and we are unaware of, any prior decision addressing that question.

Defendant therefore begins with the more general rule that, if a contract is indivisible, the non-breaching party does not have the option of seeking restitution or damages as to one part of the contract, while insisting on performance of the balance of the contract. This is because, as the Federal Circuit explained in *Stone Forest Industries, Inc. v. United States*, 973 F.2d 1548 (Fed. Cir. 1992), "when parties enter into a contract, each and every term

---

[2]At this point Nycal has abandoned its potential remedy of restitution by its in-court election. By accepting that election, we do not mean to suggest that we necessarily agree with defendant that plaintiff had to make it prior to trial. The matter is simply moot.

and condition is in consideration of all the others, unless otherwise stated." *Id.* at 1522. That is to say that an indivisible contract stands or falls as a whole. When one party succeeds on a claim of a total breach of an indivisible contract, any recovery is presumed, therefore, to resolve the entire breach. There is nothing left of the contract to perform, much less to generate a separate recovery. *See* Restatement (Second) of Contracts § 236 (1981) (hereafter "Restatement"). Restitution in a breach of contract context, moreover, typically permits the innocent party to "unwind" the contract in its entirety. *See* Restatement (Third) of Restitution § 37 (2004). *See also City of Raton v. Ark. River Power Auth.*, No. CIV 08-0026, 2009 U.S. Dist. LEXIS 49794, *71 (D. N.M. Mar. 12, 2009) (recognizing that partial rescission would normally defeat the purpose of returning the parties to the *status quo ante*).

These considerations are reflected in the Restatement of Contracts. For example, when part of a contract is unenforceable because of the statute of frauds or because of illegality, the presumption is that the entire contract is unenforceable. *See* Restatement §§ 149, 197. Similarly, where all performance by one party can be performed simultaneously, it is presumed that it is in fact due simultaneously, unless the parties specify otherwise. *See* Restatement § 234. Failure to perform any material duty under a contract acts therefore as a condition precedent to the other parties' continuing duty to perform. *See* Restatement §§ 237, 238. There are practical reasons for these principles. They are based on the assumption that when parties negotiate and execute a single contract with multiple performances or conditions, unless the parties so indicate, it should be assumed that all the promised exchanges were simultaneous. Assuming indivisibility has the effect, moreover, of sharing or minimizing the risk of non-performance if one party should decide that some portion of its performance yet owed would be disadvantageous to it.

This is illustrated, as defendant points out, in *American Savings Bank v. United States*, 519 F.3d 1316 (Fed. Cir. 2008), in which the Federal Circuit held that the contract in question was "indivisible" and therefore reversed an award to the plaintiff bank of both lost profits and partial restitution. *See id.* at 1327-28. The appellate court held that the trial court was incorrect in finding a divisible contract and thus vacated the award of partial restitution. *Id.* at 1328. The court found that restitution as to part of the contract and damages as to another part would result in "an unfair windfall for Plaintiffs." *Id.* at 1327. This makes sense when it is understood that, in an indivisible contract, either remedy, by itself, is theoretically comprehensive of all rights of the innocent party. The two remedies are thus inconsistent.

Such considerations do not attach, therefore, when the parties negotiate in such a way that part of the performance coming from one party is assumed to lead to an agreed-on equivalent part performance from the other side. *See* Restatement § 240. The rule thus does not apply when the contract is in fact divisible. In that event, partial restitution can be awarded. *See First Nationwide Bank v. United States*, 51 Fed. Cl. 762, 769 (2002), *aff'd* 431 F.3d 1342 (Fed. Cir. 2005) (holding that partial restitution was available despite continuing performance on a different, severable portion of the contract).

Nor do we believe that these considerations should attach here. Despite the fact that the contract is indivisible, and despite the prior election of the restitution remedy by co-lessees, restitution of the deposits of the 95.75 percent holders was, by definition, not comprehensive of all rights in the contract. Each owner held a fractional interest in an undivided whole. The fractional shares were both completely fungible yet inherently limited. The Amber plaintiffs received nothing that was in any sense representative of Nycal's interest. They gave up their fractional shares as a precondition to restitution, but Nycal's interest did not thereby go out of existence.

There is therefore no inherent inconsistency in allowing Nycal's lost profits claim to go forward. It is not picking and choosing which parts of the contract it wishes to enforce. There is no windfall to Nycal. The rights of the other parties have not been compromised and would not be even if they had not yet been adjudicated. Nor, for that matter, was the government able to point to any prejudice to itself.

In short, there is no prohibition on Nycal's claim for lost profits.[3] Plaintiff can continue to assert its rights to damages for breach with respect to its fractional interests in the leases.

---

[3] Defendant also argues that plaintiff is prohibited from seeking damages by the doctrines of law of the case, judicial estoppel, collateral estoppel, and *res judicata*. Its argument is apparently that, because we have previously allowed restitution for these two leases with respect to the other leaseholders, these principles dictate the same result here. We do not see the connection. These arguments are premised on our agreement with defendant's main assertion that the prior award of restitution to the other plaintiffs bars Nycal from seeking damages now. We disagree as to the main point and therefore disagree as to law of the case, estoppel, and *res judicata* as well.

CONCLUSION

Defendant's motion is therefore denied.   Trial will commence on plaintiff's claim in October 2010.   A scheduling order will be issued contemporaneously herewith, setting forth dates for pre-trial activities.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge